

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:TAW/EMR  *271 Cadman Plaza East*
F. #2018R01124  *Brooklyn, New York 11201*

February 27, 2020

**By ECF**

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Darell Woodford
                 Criminal Docket No. 18-654 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter in advance of the defendant Darell Woodford's sentencing, which is scheduled for March 16, 2020, at 11:00 a.m. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines range ("Guidelines" or "U.S.S.G.") of 78 to 97 months' imprisonment.

**I.**     **Facts**

      The facts of the case are set forth in detail in the Presentence Report dated February 10, 2018. In sum, on the evening of August 30, 2018, the defendant attempted to kill another individual by shooting him multiple times at close range. The defendant did not hesitate in his actions. After chasing down his target, the defendant caught up to him, pulled out a loaded firearm, aimed it, and tried to kill another young man on the streets of Brooklyn.

      Surveillance cameras captured the above-described events. At approximately 8:51 p.m., surveillance cameras captured the defendant and four of his friends in front of a deli on Nostrand Avenue in Brooklyn. See Exhibit A. On camera, the defendant and his friends walked towards a group of three men who appear unaware of the defendant and his friends. Id. The group of three men casually conversed with each other when one of the defendant's friends violently attacked one of the three men. Id. Immediately thereafter, the three men took off running and the defendant and his friends followed in pursuit. Id. One of these three men is the eventual victim of the defendant's attempted murder (the "Victim").

Surveillance cameras captured the defendant and his friends chasing the Victim down Newkirk Avenue in a full sprint.  See Exhibit B.  In an attempt to get away from the defendant and his friends, the Victim ran into a courtyard located at Newkirk Avenue and East 31st Street, and the defendant followed closely behind.  See Exhibit C.  As the Victim entered the courtyard, the defendant raised his firearm and opened fire at the Victim.  Id.  The defendant's first shots flew by three innocent bystanders walking just feet from the defendant.  Id.  These innocent bystanders ducked, as bullets passed by their heads.  Id.  The defendant ran past them without any acknowledgement and with zero regard for their safety.  Id.

After these first shots, a surveillance camera captured the Victim falling to the ground.  See Exhibit D.  The Victim hurriedly stood up and tried to escape, but the defendant approached quickly and again opened fire.  Id.  The Victim fell to the ground once more.  Id.  The defendant walked up to the Victim and open fire at close range.  Id.  As the Victim tried to shield himself from the defendant's onslaught, the defendant backed away with his arm still extended.  Id.   As the Victim continued to squirm in pain, the defendant immediately returned to the Victim and opened fire several more times.  Id.  Only then did the defendant run away from the scene of the crime, leaving the Victim on the ground to die.  See Exhibits C and Exhibit D.

Within minutes of the shooting, the New York City Police Department ("NYPD") arrived and secured the crime scene.  The Victim suffered multiple gunshot wounds and was transported to the hospital.  Notably, the medical staff decided to keep the bullets in the Victim's body rather than remove them.  Shortly thereafter, the NYPD recovered cartridge casings from the area where the defendant shot the Victim.

On December 6, 2018, a grand jury in the Eastern District of New York returned an indictment charging the defendant with being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

On January 10, 2020, the defendant pleaded guilty before Your Honor to the sole count of the above-referenced indictment.

**II.     Guidelines Calculation**

The applicable Guidelines range is as follows:

Base Offense Level (§§ 2K2.1(c)(1)(A), 2X1.1(c)(1), and 2A2.1(a)(2))  27

Plus:     Serious Bodily Injury (§ 2A2.1(b)(1))                                              +2

Minus:   Acceptance of Responsibility (§ 3E1.1(a) and (b))                        -3

Total:                                                                                                       26

2

Accordingly, based upon a total Offense Level of 26 and Criminal History Category III, the Guidelines yield a range of imprisonment of 78 to 97 months. The defendant stipulated to the above Guidelines calculation, which applies U.S.S.G. § 2A2.1(a)(2), "Assault with Intent to Commit Murder; Attempted Murder."

### III. The Appropriate Sentence

The government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. § 3553(a). In this case, a sentence within the applicable Guidelines range of 78 to 97 months' imprisonment is appropriate.

#### A. The Nature and Circumstances of the Offense Weigh in Favor of a Sentence within the Guidelines Range

The government respectfully submits that the nature and circumstances of the defendant's offense weigh strongly in favor of a Guidelines sentence. The seriousness of the defendant's conduct cannot be overstated. The defendant was not merely carrying ammunition, but instead relentlessly attempted to kill another individual in cold blood in the middle of a residential area. The fact that the defendant did not succeed in killing the Victim is not to the defendant's credit, and should not mitigate the severity of his punishment. The defendant's conduct was brazen and violent and the Court should sentence him accordingly.

#### B. The History and Characteristics of the Defendant Weigh in Favor of a Guidelines Sentence

The government respectfully submits that the history and characteristics of this defendant weigh in favor of a Guidelines sentence. The defendant has showed a willingness to repeatedly engage in serious criminal conduct.

The defendant is prohibited from possessing a firearm or ammunition as a result of his prior felony convictions. Specifically, on September 8, 2016, in New York County Supreme Court, the defendant pleaded guilty to (1) one count of Robbery in the Second Degree, in violation of New York Penal Law § 160.10(2)(a);[1] and (2) seven counts of Robbery in the Second Degree, in violation of New York Penal Law § 160.10(2)(b).[2] A certificate of those convictions is attached hereto as Exhibit E.

---

[1] A person is in violation of New York Penal Law § 160.10(2)(a) "when he forcibly steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . .[c]auses physical injury to a person who was not a participant in the crime."

[2] A person is in violation of New York Penal Law § 160.10(2)(b) "when he forcibly steals property and when . . . [i]n the course of the commission of the crime or of

The defendant's robbery convictions stemmed from his participation in five different robberies of eleven different victims, several of which involved a firearm. During the defendant's guilty pleas, the defendant allocated to knowingly possessing a firearm during one of those robberies.[3] Moreover, while the defendant was on bail following his guilty plea, he failed to appear in court to be sentenced and the court issued a bench warrant for his arrest. During the execution of that warrant, the arresting officers found the defendant in possession of twenty-two rounds of ammunition and an imitation pistol. See Exhibit F, Tr. 6:6-16; 13:1-6.

In his instant sentencing submission, the defendant repeatedly cites his youth as a reason for the Court to show leniency. Notably, this is not the first time the defendant has made this argument before a court. At the defendant's sentencing in his prior robbery case, his lawyer raised many of the same arguments. His prior lawyer argued, "This young man, like all the young men that come before this Court, should be given an opportunity…. So I'm just asking the Court to grant him a lenient sentence." Exhibit F, Tr. 11:5-13. On the other hand, the assistant district attorney pleaded for the court to "[m]ake him learn the consequences of his actions. Deter him now. Tell him now that he can't be involved in gangs. That he cannot possess firearms." Id. at 8:10-13.

On January 6, 2017, the state court sentenced the defendant to a period of twenty-eight months to seven years' imprisonment, to run concurrent, on each of the eight robberies to which he pleaded guilty. The state released the defendant to parole on May 29, 2018.

In the summer of 2018, the defendant was an adult. Moreover, he was an adult who had choices. He had a choice to be an adult that abided by the law and the conditions of his parole. He also had the choice to return to a life of crime. He chose the latter and, while on parole, committed the instant offense. The defendant was not deterred after being incarcerated for his last crime spree—a crime spree for which "he allocated to putting guns up to the victims and threatening to shoot them," Exhibit F, Tr. 4:3-4, and, for one victim in particular, "he recounted that, he put the gun to her head and he threatened to kill her," Exhibit F, Tr. 4:4-6.

---

immediate flight therefrom, he or another participant in the crime . . .[d]isplays what appears to be a pistol, revolver, shotgun, machine gun or other firearm."

[3]   The assistant district attorney who prosecuted the defendant's state cases informed the government that the defendant allocated to that conduct. The government has ordered, but has not yet received, the minutes from the defendant's September 8, 2016 guilty pleas. The government will provide a copy of those minutes to the Court and defense counsel as soon as it receives them. However, the defendant's allocution is described in detail in the defendant's sentencing minutes, which are attached hereto as Exhibit F. See Exhibit F, Tr. 4:3-6.

4

Instead, the defendant was emboldened by the state court's leniency. He went from threatening to kill to actually attempting to kill. The Court should not allow the defendant to once again avoid the full consequences of his violent choices.

       C.    Deterrence and the Need to Protect the Public Weigh in Favor of a Guidelines Sentence

The government respectfully submits that the need for deterrence and the need to protect the public also warrant a Guidelines sentence. The defendant's conduct not only endangered the individual he was trying to kill, but it also endangered the lives of the multiple innocent bystanders that night. The defendant opened fire within feet of these individuals. A significant sentence is required to deter the defendant from engaging in future criminal conduct in which someone might be killed. Similarly, a significant sentence will protect the public from the defendant's persistent criminal conduct. A Guidelines sentence will further show individuals weighing whether to commit similar crimes that the Court takes seriously a shooting with the intent to kill and it will punish that serious criminal conduct accordingly.

IV.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 78 to 97 months' imprisonment.

                              Respectfully submitted,

                              RICHARD P. DONOGHUE
                              United States Attorney

By:    /s/
                              Temidayo Aganga-Williams
                              Erin M. Reid
                              Assistant U.S. Attorneys
                              (718) 254-7000

cc:     Allegra Glashausser, Esq. (counsel to defendant) (by ECF)
        U.S.P.O. Jamie L. Turton (by E-mail)